UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRIAN GERMAN CONSTRUCTION, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-10749** |
| **LJC DEFENSE CONTRACTING INC. et al.** | **SECTION T(5)** |

## ORDER AND REASONS

Before the Court is Defendants Liberty Mutual Insurance Company and LJC Defense Contracting Inc.'s Motion to Compel Arbitration, Motion to Dismiss, and Motion to Stay. Rec. Doc. No. 8. For the following reasons, the Defendants' Motion to Compel Arbitration and Motion to Stay is GRANTED. Defendant's Motion to Dismiss is DENIED.

### I.   BACKGROUND

This lawsuit arises from a dispute between the plaintiff-subcontractor, Brian German Construction, Inc. ("BGC"), and defendants, contractor, LJC Defense Contracting, Inc. ("LJC") and bond issuer, Liberty Mutual Insurance Company ("Liberty Mutual"). Plaintiff BGC filed this suit on December 1, 2006, alleging that LJC had failed to pay BGC for all the work performed pursuant to the Subcontract Agreement. BGC seeks recovery from Liberty Mutual of the monies allegedly

owed to BGC by Liberty Mutual pursuant to the Payment Bond (Bond No. 964006483) that Liberty Mutual issued. Rec. Doc. No. 1.

On September 4, 2005, LJC entered into Contract W912P9-05-D-0521 with the United States Army Corps of Engineers for the installation of temporary roofing on housing in South Louisiana in the wake of Hurricane Katrina. Rec. Doc No. 1, ¶¶ 14, 16. On September 14, 2005, LJC entered into Subcontract Agreement No. 05-011-02 with BGC to roof storm damaged homes in South Louisiana with polyethylene materials and plywood sheathing. Id. at ¶ 12; See Rec Doc. No. 8-3. The subject Subcontract Agreement contains a section entitled "**BINDING ARBITRATION**" which states:

> The undersigned parties hereto, convinced that a large part of the litigation arising from the non-fulfillment of contracts and agreements is caused by a failure to reduce the essential terms and conditions to writing, and much of the remainder of the litigation in connection with written contracts is caused by weaknesses of various kinds in such written documents, have endeavored to use every care and caution in the preparation of this instrument, knowing nevertheless that a relationship of this character may pose new problems from time to time requiring subsequent resolution and agreement. It shall therefore be the aim and intention, in the mutual interests hereunder, to provide practical and dignified means for friendly adjustment of any differences in interpretation of this agreement or the settlement of disputes of any kind that may arise between the parties. To such kind, it is mutually agreed that the parties shall be free to bring any and all such matters to the attention of the other at any time without prejudicing their harmonious relationship, and that the offices of either party shall be available at all times for the prompt and effective adjustment of any and all such differences, either by mail, telephone, or personal meeting under friendly and courteous circumstances. However, a failure to reach an adjustment of any difference, or to settle any dispute or claim that may arise, except as otherwise provided in this Agreement, shall thereupon make the same a matter for arbitration hereunder, on the written request of anyone party to the other, and such arbitration shall be in accordance with the Commercial Arbitration Rules of the American Arbitration Association, or, if those rules no longer exist, then in accordance with similar rules published by a recognized arbitration association or group. The parties anticipate

>that the resources of the parties used to perform this Agreement will come from interstate sources, and therefore acknowledge and agree that this Agreement, the Addendum, the Attachments, if any, and all agents thereof involves "commerce" as defined in the United States Arbitration Act, Title 9, United States Code, and the parties further agree and acknowledge that each of them is waiving rights to seek remedies in court, including the right to a jury trial.

Rec. Doc. No. 8-3, pp. 2-3.

After learning that this suit was filed, LJC advised BGC's counsel in writing that LJC wished to resolve the dispute pursuant to the Binding Arbitration section of the Subcontract Agreement. Rec. Doc. No. 8-4.

## II.    LAW AND ANALYSIS

The Federal Arbitration Act ("FAA") applies to written arbitration provisions contained in contracts involving commerce and "its reach is coextensive with the Congressional power to regulate under the Commerce Clause." Trapp Chevrolet-Oldsmobile-Cadillac, Inc. v. General Motors Corporation, 2002 U.S. Dist. LEXIS 10412, 2002 WL 11633611, *2 (E.D.La. 5/31/02). Section 2 of the FAA provides that a written provision for arbitration in any "contract evidencing a transaction involving commerce. . . shall be valid, irrevocable and enforceable." See 9 U.S.C. § 2. Section 3 requires a federal court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement. See 9 U.S.C. § 3. Finally, Section 4 provides a federal remedy for a party aggrieved by the failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," and directs the federal court to order arbitration once it is satisfied that an

agreement for arbitration has been made and has not been honored. See 9 U.S.C. § 4.

The plaintiff's opposition to this motion concedes that its claims against the general contractor, LJC, are arbitrable. Rec. Doc. No. 11, p. 1. The plaintiff does not oppose the defendant's Motion to Compel Arbitration and Stay the Proceedings as it relates to LJC. Id. citing Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co., 239 F.R.D. 404, 417 (W.D. Pa. 2006)(finding breach of contract claims between subcontractor and general contractor subject to arbitration provision and staying claims).

Plaintiff, however, opposes the motion, insomuch as it affects its claims against the Surety, Liberty Mutual. Plaintiff has no separate arbitration agreement with Liberty Mutual and Liberty Mutual was not a party to the plaintiff's Subcontractor Agreement with LJC. At least one Louisiana court has concluded that claims against the surety, not bound by the contractor-subcontractor arbitration agreement, should go forward in federal court concurrently with the arbitration proceedings. See U.S. for Use of Pensacola Const. Co. v. St. Paul Fire and Marine Ins. Co., 705 F. Supp. 306 (W.D. La. 1988). In that case, it was the defendant who sought to stay the federal court proceeding pending arbitration and the court found that requiring the plaintiffs to stay its suit against the surety would create havoc for the plaintiff and subvert the rational for the Miller Act. Id. at 309.

The Supreme Court has addressed the appropriateness of a judicial stay in a situation such as this one. In Moses H. Cone Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983), the Supreme Court stated, "In some cases, of course, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. The decision is one left to the district court ... as a matter of its discretion to control its docket." Id. at 20 n. 23. See also Coastal (Bermuda)

4

Ltd. v. E.W. Saybolt & Co., 761 F.2d 198, 203 n. 6 (5th Cir.1985).

Because it is unclear as to whether Liberty Mutual will be bound by any arbitration findings, this Court cannot dismiss the current case. However, in the interests of judicial economy, the Court will stay the current proceedings pending arbitration.

Accordingly,

**IT IS ORDERED** that the Defendant's Motion to Compel Arbitration be **GRANTED**, the Defendant's Motion to Stay be **GRANTED** and the Defendant's Motion to Dismiss be **DENIED**.

New Orleans, Louisiana this 26th day of June, 2007.

_____
**UNITED STATES DISTRICT JUDGE
G. THOMAS PORTEOUS, JR.**